C. Christine Burns #017108
Kathryn King #024698
**BURNSBARTON LLP**
45 West Jefferson, 11th Floor
Phoenix, AZ 85003
Telephone: 602.753.4500
christine@burnsbarton.com
kate@burnsbarton.com

James J. Pastore, Jr. (admission papers forthcoming)
William Ward Bucher IV (admission papers forthcoming)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6696
jjpastore@debevoise.com
wwbucher@debevoise.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Go Daddy Operating Company, LLC, a Delaware corporation, | NO. |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING AND REGISTERED TRADEMARK COUNTERFEITING** |
| vs. | |
| John Doe, that person or entity who created and marketed the fraudulent "GoDaddy Mobile" application on the Google Play Store under the developer name "GoDaddy Realtions", | |
| Defendant. | |

Plaintiff, Go Daddy Operating Company, LLC ("GoDaddy"), by its attorneys, BurnsBarton LLP and Debevoise & Plimpton LLP, hereby alleges the following Complaint against John Doe, that person or entity (whether singular or plural) who created, operated, marketed or otherwise controlled the fraudulent mobile application entitled "GoDaddy Mobile" on the Google Play Store under the developer name "GoDaddy Realtions" [sic] ("Defendant"), and, in support, states as follows.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NATURE OF THE ACTION

1.      This is an action for trademark infringement, false designation of origin, false advertising and counterfeiting arising out of Defendant's marketing and distribution of a bogus mobile application (the "Counterfeit App") that purported to be from GoDaddy when in fact the Counterfeit App was not distributed by, affiliated with, or otherwise authorized by GoDaddy.

2.      GoDaddy, a Scottsdale, Arizona-based Internet domain registrar and web hosting company, has more than 17 million customers worldwide and 73 million domain names under management.  It powers the world's largest cloud platform dedicated to small, independent ventures, and its services are well-known and advertised in high-profile settings, including the Super Bowl.

3.      As depicted below, Defendant offered a bogus mobile application through the Google Play Store under the name "GoDaddy Mobile," which listed "GoDaddy Realtions" as its developer:



-2-

4.      The Counterfeit App copies wholesale – down to the registered trademark symbol – the federally registered GoDaddy logo, and GoDaddy word mark.

5.      In a description on the Google Play Store, Defendant touted the Counterfeit App as a legitimate GoDaddy product, claiming, "We are happy to introduce cPanel App for you webmasters ***powered by GoDaddy***.  You can also access your Account Products using the 'My Account' section from the slider!"  *See* Exhibit A – Copy of Counterfeit App Google Play Store Page (emphasis added).

6.      In short, Defendant willfully attempted to trade on GoDaddy's goodwill by marketing an app under GoDaddy's name, using GoDaddy's logo, and falsely and expressly claiming that the Counterfeit App was "***powered by GoDaddy***."

7.      This calculated effort to fool consumers into downloading the Counterfeit App not only unlawfully traded on GoDaddy's goodwill, but also significantly harmed GoDaddy.  Customers downloaded the Counterfeit App expecting the same high level of quality that they have come to associate with genuine GoDaddy products and services.  Instead, customers who downloaded the Counterfeit App received an inferior product, which was skewered in online reviews that described it as "Just a browser full of ads" and "Slower than Christmas."

8.      GoDaddy brings this action seeking injunctive and monetary relief against Defendant for its willful and blatant violations of GoDaddy's intellectual property.

## PARTIES

9.      Plaintiff Go Daddy Operating Company, LLC is a corporation organized under the laws of Delaware, with its principal place of business at 14455 N. Hayden Road, Scottsdale, Arizona 85260.

-3-

10.     Defendant John Doe is that person or entity (whether singular or plural) who created, operated, marketed or otherwise controlled the fraudulent mobile application entitled "GoDaddy Mobile" on the Google Play Store under the developer name "GoDaddy Realtions."

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

12.     This Court has personal jurisdiction over Defendant John Doe pursuant to Arizona's Long-Arm Statute, Ariz. R. Civ. P. 4.2(a), as John Doe has transacted and conducted business and committed tortious acts within Arizona and within this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## GODADDY AND ITS TRADEMARKS

14.     GoDaddy provides domain registration and web hosting services, among others.  When a company or individual wants to purchase a domain name – such as www.example.com – GoDaddy enables the consumer to do so.  GoDaddy also offers hosting services to assist customers who wish to establish a website.  While GoDaddy serves customers large and small, the features and services offered by GoDaddy are particularly useful to small businesses that might not otherwise be able to maintain a web presence.

15.     Customer service sets the GoDaddy brand apart.  GoDaddy caters to small businesses and to individuals – particularly those who are building their first website.  Because of its relentless focus on customer support, customers have come to associate

GoDaddy with high-quality products and services that can fully and simply support customers' domain registration and web hosting needs.

16.     GoDaddy services its customers not only through its website, www.godaddy.com, but also through mobile applications offered through the Google Play Store, among other platforms, including "GoDaddy Investor," "GoDaddy SmartLine 2nd Phone," and "GoDaddy Bookkeeping."

17.     GoDaddy extensively promotes the GoDaddy® brand, including through high-profile events such as the Super Bowl and NASCAR racing.  It enjoys a significant social media following with over 1.7 million Facebook followers, and more than 300,000 Twitter followers.

18.     GoDaddy owns at least six federal trademark registrations for its GODADDY® brand (collectively, "GoDaddy Registered Trademarks"; copies of the registration certificates are attached as Exhibit B) including:

a.   GODADDY, for use in connection with, among other things, "computer services; global computer system domain name searching services; online commercial information directories on the Internet featuring software developers and software applications; providing information about domain names for sale by means of the Internet; parking domain names for others; electronic storage of files and documents; storage of electronic media, namely, images, text, audio, financial and contact data; designing, developing and hosting web sites for others on a global computer network; providing user authentication service in e-commerce

transactions on a global computer network; online social networking

services."  (USPTO Registration No. 4472643; registered January 21,

2014, based on a claimed date of first use of April 25, 2013) (the

"GoDaddy Word Mark")



b.        logo, for use in connection with, among other things,

"[c]omputer programs, namely, programs for creating, posting and

maintaining websites on the global computer network, computer

graphics software, computer authoring software for creating, editing and

delivering textual and graphic information, locally and remotely, and

digitized graphics modules for designing and developing websites on a

global computer network; and computer software provided by means of

a global computer network which assists a user in creating customized

forms; financial sponsorship of athletes and athletic events; computer

services, namely, managing domain names for use on a global computer

network by providing an interactive web site that allows users to

remotely manage, administer, modify and control their domain names;

designing, developing and hosting web sites for others on a global

computer network; registering domain names for use on a global

computer network."  (USPTO Registration No. 3753673; registered

March 2, 2010, based on a claimed date of first use of November 10,

2001) (the "GoDaddy Logo")

   c.  GoDaddy also owns registrations protecting its GoDaddy marks in other

classes and in other stylizations under USPTO Registration Nos.

4472631, 4549193, 4516127, and 4744120.

19.    GoDaddy has continuously used the GoDaddy Registered Trademarks since

1999 in commerce in the United States.  As a result of the company's success, GoDaddy

has built goodwill and value in the GoDaddy Registered Trademarks such that consumers

associate them exclusively with GoDaddy.

## DEFENDANT'S INFRINGING MOBILE APPLICATION AND WRONGFUL CONDUCT

20.    From at least on or about December 12, 2017 up to and including on or

about December 15, 2017, Defendant offered a bogus mobile application in the Google

Play Store under the name "GoDaddy Mobile."

21.    The Counterfeit App copied the GoDaddy Logo for its application icon.

22.    The Counterfeit App listed "GoDaddy Realtions" as the developer and

falsely claimed to be "powered by GoDaddy" in a description on the Google Play Store.

Defendant expressly and falsely advertised that "[w]e are happy to introduce cPanel App

for you webmasters *powered by GoDaddy*. You can also access your Account Products

using the 'My Account' section from the slider!"

23.    GoDaddy did not and does not maintain any affiliation whatsoever with the

Counterfeit App.  At no time did GoDaddy authorize the creation of the Counterfeit App,

authorize Defendant to distribute the Counterfeit App, or otherwise permit Defendant to

use the GoDaddy Word Mark or the GoDaddy Logo in association with the Counterfeit App.

24.    On or about December 15, 2017, shortly after learning of the Counterfeit App, GoDaddy submitted a request to Google to remove the Counterfeit App from the Google Play Store.  Google removed the Counterfeit App on or about December 15, 2017.  Prior to the removal of the Counterfeit App, it was available nationwide through the Google Play Store, and an investigator working for GoDaddy downloaded a copy of it while located in Arizona.

25.    Upon information and belief, thousands of customers nationwide, including many in Arizona, downloaded the Counterfeit App prior to its removal from the Google Play Store.

26.    Upon information and belief, Defendant does not have a federal or state trademark registration for "GoDaddy," a GoDaddy mark, or a logo similar to the GoDaddy Logo.  In fact, other than the marks owned by GoDaddy, there are no federal trademark registrations for the name "GoDaddy."

27.    Upon information and belief, Defendant was aware of GoDaddy's use of the GoDaddy Word Mark and GoDaddy Logo for web hosting services and related mobile applications.  Defendant blatantly copied the GoDaddy Logo and GoDaddy Word Mark in an effort to confuse consumers into believing that the Counterfeit App was an actual GoDaddy product.

28.     At the same time, Defendant expressly and falsely claimed an association with GoDaddy, touting its Counterfeit App as "powered by GoDaddy" when it had no association with GoDaddy whatsoever.

29.     Defendant marketed the Counterfeit App through the same channels of trade – the Google Play Store – that GoDaddy marketed its legitimate mobile applications.  The advertising, promotion, and display of these products in such close proximity further exacerbated the likelihood of consumer confusion.

30.     Defendant's infringement of the GoDaddy Registered Trademarks likely resulted in the installation of the Counterfeit App by consumers who incorrectly believed that the Counterfeit App came from, was sponsored or licensed by, or was associated or affiliated with GoDaddy.

31.     The harm to GoDaddy from those mistaken downloads was exacerbated by the inferior quality of the Counterfeit App.  Customers who have come to associate the GoDaddy brand with high-quality products and services were instead disappointed by an inferior product that falsely touted its connection with GoDaddy.  Online reviews skewered the Counterfeit App as nothing more than "Just a browser full of ads."  Another reviewer complained the Counterfeit App was "Slower than Christmas."

32.     Defendant's conduct in copying the GoDaddy Logo, offering the Counterfeit App under GoDaddy's name, listing "GoDaddy Realtions" as the developer of the Counterfeit App, and making express, false assertions that the Counterfeit App was "powered by GoDaddy" permits only one conclusion:  Defendant intentionally appropriated GoDaddy's intellectual property in an attempt to pass off the Counterfeit

App as an actual GoDaddy product and, in so doing, sought to trick customers into downloading it.  Defendant's willful infringement of GoDaddy's intellectual property rights has harmed GoDaddy's brand.

## COUNT I:  REGISTERED TRADEMARK
## INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT

33.     GoDaddy repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

34.     The GoDaddy Registered Trademarks are registered with the United States Patent and Trademark Office.

35.     The GoDaddy Registered Trademarks are used in commerce, are non-functional, are inherently distinctive, and have acquired secondary meaning in the marketplace.

36.     Defendant offered the Counterfeit App in commerce bearing identical copies of the GoDaddy Word Mark and the GoDaddy Logo.  Defendant's use of the GoDaddy Word Mark and GoDaddy Logo for the development, distribution, and promotion of the Counterfeit App likely caused confusion and deceived consumers as to the source, origin or sponsorship of the software.  Consumers seeing the Defendant's mobile application in the marketplace likely believed that it came from, was sponsored or licensed by, or was associated or affiliated with the genuine GoDaddy brand.

37.     Defendant's use of the GoDaddy Word Mark and the GoDaddy Logo in connection with the Counterfeit App constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     By reason of the foregoing, GoDaddy is entitled to injunctive relief against Defendant, restraining Defendant from any further acts of infringement of GoDaddy's federally registered trademarks, and to recovery of damages proven to have been caused by reason of Defendant's acts.

## COUNT II:  TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN UNDER SECTION 43(A) OF THE LANHAM ACT

39.     GoDaddy repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

40.     Defendant's use of the GoDaddy Word Mark and GoDaddy Logo and deceptive marketing practices in connection with the Defendant's mobile application constitutes trademark infringement and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41.     By reason of the foregoing, GoDaddy is entitled to injunctive relief against Defendant, restraining Defendant from any further acts of infringement of GoDaddy's federally registered trademarks, and to recovery of damages proven to have been caused by reason of Defendant's acts.

## COUNT III:  FALSE ADVERTISING UNDER SECTION 43(A) OF THE LANHAM ACT

42.     GoDaddy repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

43.     The false, misleading, and deceptive statements made by Defendant regarding the Defendant's mobile application are material and deceived consumers in the United States.

44.     Defendant has made false, deceptive, and misleading descriptions and representations of fact in commercial advertising and promotion in connection with goods and services distributed in interstate commerce, which misrepresent the nature, characteristics and qualities of the Defendant's mobile application, in violation of 15 U.S.C. § 1125(a).

45.     Defendant's advertising for the Counterfeit App included the following claim: "We are happy to introduce cPanel App for you webmasters powered by GoDaddy. You can also access your Account Products using the 'My Account' section from the slider!"

46.     Contrary to that claim, the Counterfeit App was not "powered by GoDaddy."

47.     Based on Defendant's false and deceptive online advertising, consumers believed that the Defendant's mobile application was capable of certain functions and used GoDaddy technology.  The false message communicated by Defendant's description likely misled consumers into downloading the Defendant's mobile application.

48.     These violations have injured GoDaddy and the public, causing deception, confusion, and damage in an amount that cannot presently be ascertained.

49.     By reason of the foregoing, GoDaddy is entitled to permanent injunctive relief against Defendant restraining further acts of false advertising, and to recover damages proven to have been caused by reason of Defendant's acts.

## COUNT IV: REGISTERED TRADEMARK COUNTERFEITING
## UNDER SECTION 34 OF THE LANHAM ACT, 15 U.S.C. §1116 (D)

50.     GoDaddy repeats and realleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

51.     The GoDaddy Registered Trademarks are registered trademarks with the

U.S. Patent and Trademark Office.  The registration for the GoDaddy Logo is

incontestable.

52.     The Counterfeit App, which has been distributed in commerce by the

Defendant, wholly incorporates GoDaddy's registered GoDaddy Word Mark and

GoDaddy Logo.  As such, the marks used on the Counterfeit App are substantially

indistinguishable from the GoDaddy Registered Trademarks.

53.     Defendant's acts of trademark counterfeiting, unless restrained, will cause

irreparable injury to GoDaddy and to the business and goodwill represented by the

GoDaddy trademark, leaving GoDaddy with no adequate remedy at law.

54.     By reason of the foregoing, GoDaddy is entitled to injunctive relief against

Defendant, restraining Defendant from any further acts of trademark counterfeiting, and

recovery of statutory damages, and attorneys' fees, pursuant to 15 U.S.C. § 1117(b)-(c) by

reason of Defendant's acts.


## DEMAND FOR JURY TRIAL

GoDaddy requests a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff is entitled to and prays for relief as follows:

-13-

A.     That Defendant and all those in active concert or participation with Defendant (including, but not limited to, Defendant's officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns and contracting parties) be permanently enjoined and restrained from:

i.     Making any use of (including, but not limited to, developing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) or seeking to register with any federal or state agency the GoDaddy name or any other name confusingly similar to the GoDaddy Word Mark;

ii.     Making any use of (including, but not limited to, developing, distributing, advertising, marketing, promoting, selling, offering, or making available for sale) or seeking to register with any federal or state agency a logo consisting of a  stylized drawing of the profile of a man wearing sunglasses with green lenses, with a yellow star in the upper left corner of the head, and orange curved lines above the head, or any other logo confusingly similar to the GoDaddy Logo;

iii.     Making any false or misleading statements in connection with any mobile application, including any statements implying that the application is associated with GoDaddy, utilizes GoDaddy's technology, or is "powered by GoDaddy";

iv.     Representing, by any means whatsoever, that any products or software developed, distributed, shipped, advertised, marketed, promoted, sold or offered or made available for sale by Defendant are GoDaddy's products or software, or vice versa, and from otherwise acting in a way likely to cause confusion, mistake or deception on the part of retailers (both digital and physical), purchasers, or consumers as to the origin or sponsorship of such products; and

v.      Doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead retailers, purchasers or consumers into the belief that Defendant's products and software come from GoDaddy or are somehow sponsored or licensed by, or associated or affiliated with, GoDaddy or its products.

B.     That Defendant account to GoDaddy for Defendant's profits and any and all damages sustained by GoDaddy, to the extent calculable, arising from the foregoing acts of trademark infringement, false designation of origin, counterfeiting, and false advertising.

C.     That, in accordance with such accounting, GoDaddy be awarded judgment for three times such profits or damages (whichever is greater) pursuant to 15 U.S.C. § 1117.

D.     That GoDaddy be awarded its costs, including its reasonable attorneys' fees and disbursements in this action.

E.     That Defendant deliver up for destruction all infringing products and software code in Defendant's possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

F.     That Defendant file with the Court and serve on counsel for GoDaddy within thirty (30) days after entry of any injunction issued by the Court in this action a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action.

G.     That GoDaddy be awarded its attorneys' fees.

H.     That GoDaddy have such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 22nd day of December 2017.

**BURNSBARTON LLP**

By    *s/ C. Christine Burns*
     C. Christine Burns

**DEBEVOISE & PLIMPTON LLP**

By    *s/James J. Pastore, Jr.*
     James J. Pastore, Jr.
     William Ward Bucher IV
     Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing.

*s/ Carolyn Galbreath*